IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MITCHELL W. WOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | 1:15CV2 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Mitchell Wood ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff filed an application for DIB on January 7, 2011, alleging a disability onset date of February 6, 2006. (Tr. at 172-73.)[1] His application was denied initially and upon reconsideration. (Tr. at 71-103, 108-16, 118-25.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 126-27.) Following the subsequent

---

[1] Transcript citations refer to the Sealed Administrative Transcript of Record [Doc. #7].

hearing on May 7, 2013 (Tr. at 27-54), the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act (Tr. at 12-22). On November 4, 2014, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the

[ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" between March 24, 2010, the date his previously-filed disability claims were denied,[4] and September 30, 2012, his date last insured. (Tr. at 12, 14.) He therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: dystrophic toenails, cervical degenerative disc disease, lumbar intervertebral disc space narrowing, and major depressive disorder. (Tr. at 15.) The ALJ found at step three that these impairments did not meet or equal a disability listing. (Tr. at 15.) Therefore, Plaintiff's RFC was assessed, and the ALJ determined that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) with

---

[4] Plaintiff previously filed claims for both DIB and Supplemental Security Income on February 21, 2008, based on the same impairments at issue here. A hearing was held on those claims on October 28, 2009, and the ALJ denied the claims in a decision on March 24, 2010. (Tr. at 58-66.) No appeal was taken from that decision, and that determination became final. The alleged disability period addressed in the present case therefore began after the denial of the previous claims on March 24, 2010. (Tr. at 12.) See 42 U.S.C. § 405(h); 20 C.F.R. § 404.987; McGowen v. Harris, 666 F.2d 60 (4th Cir. 1981); Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 474 (4th Cir. 1999). Consistent with that procedural history, at the hearing before the ALJ, Plaintiff amended his alleged onset date to October 12, 2010. (Tr. at 29.)

further postural and mental limitations. (Tr. at 16.) At step four of the analysis, the ALJ found, based on the testimony of a vocational expert, that Plaintiff's past relevant work exceeded his RFC. (Tr. at 19.) However, the ALJ determined at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy. (Tr. at 20.) Based on this finding, he concluded that Plaintiff was not disabled. (Tr. at 20-22.)

Plaintiff now contends that the ALJ's finding at step three of the sequential analysis "is completely contradictory to the medical evidence contained in the record" and that the evidence establishes that Plaintiff "had a combination of impairments that meet or medically equals one of the listed impairments." (Pl.'s Br. [Doc. #10] at 3-4.) Plaintiff further contends that his treatment records from the Veteran's Administration Medical Center ("VAMC") "constituted a basis for an award of benefits," and that additional, "new evidence from the VA, which was timely submitted to the Appeals Council" further supported his claim. (Id.) [5] However, in making this argument, Plaintiff fails to properly identify which listing or listings he allegedly meets, let alone identify specific record evidence which shows he meets each element of such a listing(s). Instead, Plaintiff cites his VAMC medical records, consisting of over 200 pages, in their entirety, and generally claims that they contain evidence of his "history of chronic low back pain, joint stiffness, muscle weakness[,] and major depression." (Id. at 4.) In asserting his claim in this manner, Plaintiff has failed to comply with the Court's direction that briefing in this case must "state in concise fashion each of the issues for review" and must set out the "argument for each of the issues with page citation to the record for the evidence

---

[5] The Court notes that Plaintiff does not cite to a VA disability determination in support of his claim; instead, Plaintiff simply cites to his medical records which reflect his treatment at the Veteran's Administration Medical Center.

that supports the issue, along with citation and discussion of any contrary evidence." (Notice [Doc. #8].) As a result, it is difficult to determine the actual basis for Plaintiff's claims in this case. Nevertheless, the Court has attempted to determine the nature of Plaintiff's claims, and concludes that the claims are without basis in any event, as set out below.

To the extent that Plaintiff is attempting to raise a challenge to the ALJ's determination at step three of the analysis, the Court notes generally that

> The listings set out at 20 CFR pt. 404, subpt. P, App. 1 (pt. A) (1989), are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. See Social Security Ruling (SSR) 83–19, Dept. of Health and Human Services Rulings 90 (Jan.1983) ("An impairment 'meets' a listed condition ... only when it manifests the specific findings described in the set of medical criteria for that listed impairment." "The level of severity in any particular listing section is depicted by the *given set* of findings and not by the degree of severity of any single medical finding—no matter to what extent that finding may exceed the listed value"). *Id.*, at 91. (Emphasis in original.)
>
> . . . .
>
> The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity." See 20 CFR § 416.925(a) (1989) (purpose of listings is to describe impairments "severe enough to prevent a person from doing any gainful activity"); SSR 83–19, at 90 (listings define "medical conditions which ordinarily prevent an individual from engaging in any gainful activity"). The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work.

Sullivan v. Zebley, 493 U.S. 521, 529-32 (1990) (footnotes omitted); see also Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013) ("The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" (internal citations omitted)).

Here, Plaintiff may be attempting to challenge the ALJ's analysis of the two listings identified in the decision itself, namely 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04 (hereinafter "Listing 1.04"), which pertains to disorders of the spine, and 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04 (hereinafter "Listing 12.04"), which pertains to affective disorders, including depression. The Court will consider each of these Listings in turn.

With respect first to Listing 1.04, the ALJ specifically concluded that the record failed to establish that Plaintiff's impairments met Listing 1.04.[6] (Tr. at 15.) The ALJ noted "no

---

[6] To meet the requirements of Listing 1.04, a claimant first must show a disorder of the spine, such as a "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [and/or] vertebral fracture . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04. In addition, he must demonstrate one of the following three scenarios:
 A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
  or
 B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
  or
 C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

8

indication that a treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments[,] singly or in combination, medically meet or equal the criteria of any listed impairments." (Tr. at 15.) In addition, the ALJ subsequently discussed Plaintiff's relevant VAMC medical records at length in his decision, specifically noting the results of x-ray and bone density scans relating to Plaintiff's back impairments. (Tr. at 16-18.) As noted by the ALJ, "[a] bone density scan performed in November 2010 revealed normal bone density in the spine and left hip, and an x-rays [sic] of his lumbar and cervical spine revealed slightly narrow L5-S1 interspace and multi-level cervical degenerative disc disease." (Tr. at 17.) In addition, the ALJ noted that Plaintiff "subsequently began treatment with pain management and therapeutic exercise to increase range of motion, strength, functional activities, gait, and stair training to improve community ambulation" and a "therapy rehabilitation note dated January 30, 2012 indicates that [he] ambulated into the gym with no signs of excessive low back pain or antalgic gait." (Tr. at 18.)

To the extent that Plaintiff may be attempting to challenge the ALJ's conclusion as to Listing 1.04, Plaintiff never identifies which of the three sections of Listing 1.04 he would have the ALJ further analyze on remand, nor does he point to any specific evidence supporting his assertion that he meets such a listing. (See Pl.'s Br. at 3-4.) Moreover, this is not a case where the "medical record includes a fair amount of evidence supportive of his claim" with "probative evidence strongly suggesting that [the Plaintiff] meets or equals" a listing. Radford, 734 F.3d at 295. Indeed, it is not clear what evidence in the record Plaintiff contends would support such a finding. Plaintiff cites to the VAMC records generally as supporting a finding of "chronic low back pain" (Pl. Br. at 4), and at the hearing before the ALJ, Plaintiff cited to

9

treatment records from November 16, 2010 as reflecting chronic low back pain. (Tr. at 29-30.) However, the November 2010 treatment record was considered by the ALJ, as noted above. That medical report indicates that "[t]he spine is normally aligned with the disc spaces well maintained except perhaps slight narrowing at the L5-S1 interspace. No compression or other abnormality is noted" and the "x-ray is stable as compare to 2008." (Tr. at 386-87.) The treatment report also indicates "degenerative disease at C4-C5 and C5-C6," which the ALJ noted, and states that the "x-ray suggest[s] arthritis." (Tr. at 387.) The treatment notes for the November 2010 visit indicate that Plaintiff was "[a]mbulatory without assistance" with "mild stiffness" in the neck and lower back, and was advised to exercise. (Tr. at 389-90.) As noted by the ALJ, there is "no indication that a treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments" meet or equal the criteria for Listing 1.04, and Plaintiff has pointed to no evidence to support such a claim. In the circumstances, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet the requirements of Listing 1.04.

With regard to Listing 12.04, the ALJ considered Listing 12.04 and specifically considered both the "paragraph B" and "paragraph C" criteria relevant to the listing.[7] The

---

[7] Listing 12.04 encompasses affective disorders, including depressive, manic, and bipolar syndromes, and may be met in one of two ways. Most commonly, a claimant first must manifest certain "paragraph A" criteria, i.e., specific symptoms set out in the listing itself. These criteria, in turn, must result in at least two of the following paragraph B criteria:
    1.    Marked restriction of activities of daily living; or
    2.    Marked difficulties in maintaining social functioning; or
    3.    Marked difficulties in maintaining concentration, persistence, or pace; or
    4.    Repeated episodes of decompensation, each of extended duration.
20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(B). In other words, a claimant must meet both paragraphs A and B.
    Alternatively, a claimant may demonstrate that he meets the criteria of paragraph C alone. However, this requires medically documented history of chronic depression lasting at least two years and causing at least one of three, enumerating, extreme limitations, including repeated, extended episodes of decompensation or

ALJ then set out his reasons for finding that the severity of Plaintiff's mental impairment did not meet or medically equal the criteria required by Listing 12.04. (Tr. at 15-16.) Specifically, the ALJ found that Plaintiff did not have marked restriction in activities of daily living, maintaining social functioning, or maintaining concentration, persistence or pace, nor did he have any episodes of decompensation. (Tr. at 15.) The ALJ noted that Plaintiff had no problems taking care of his personal needs, could prepare small meals, could ride in a car, and could handle money. The ALJ noted some limitations in social functioning and some limitations in memory, concentration, and completing tasks, but these limitation were reflected in the RFC and did not rise to the level of a marked limitation. (Tr. at 15.) Thus, the "paragraph B" criteria of Listing 12.04 were not satisfied. The ALJ further noted that the evidence failed to establish the presence of any of the "paragraph C" criteria. (Tr. at 15.)

As the ALJ ultimately concluded, there is "no indication that a treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments" meet or equal the criteria for Listing 12.04. Although Plaintiff now argues that the ALJ's conclusions regarding this evidence are "completely contradictory to the medical evidence," Plaintiff fails to point to a single record conflicting with the ALJ's analysis or any specific evidence demonstrating that he meets the requirements of Listing 12.04. Accordingly, substantial evidence supports the ALJ's findings at step three of the sequential analysis.

---

the inability to function outside of a highly supporting living arrangement. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(C). Plaintiff has not alleged, let alone shown evidence of, such limitations.

11

Case 1:15-cv-00002-WO-JEP   Document 13   Filed 02/22/16   Page 11 of 13

Finally, it appears that Plaintiff contends that benefits should have been awarded based on "new evidence" submitted to the Appeals Council on appeal following the decision of the ALJ. As to this issue, the applicable regulations "specifically permit claimants to submit additional evidence, not before the ALJ, when requesting review by the Appeals Council. In such cases, the Appeals Council first determines if the submission constitutes 'new and material' evidence that 'relates to the period on or before the date of the [ALJ's] hearing decision.'" Meyer v. Astrue, 662 F.3d 700, 704-05 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.968, 404.970(b)). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" Id. (citing Wilkins v. Secretary of Health & Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991)). It is up to the Appeals Council to decide in the first instance whether additional evidence meets these criteria and will be considered. If the Appeals Council concludes that the additional evidence meets these criteria, the Appeals Council must then consider the new evidence along with the entire record in deciding whether to grant review of the ALJ's decision. See Wilkins, 953 F.2d at 95-96.

In this case, the Appeals Council addressed Plaintiff's "new evidence," and concluded that:

> We also looked at medical record[s] from Salisbury Veterans Medical Center dated June 4, 2013 to August 21, 2013 (28 pages). The Administrative Law Judge decided your case through September 30, 2012, the date you were last insured for disability benefits. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits.

(Tr. at 2.) Because the Appeals Council concluded that the records did not satisfy the regulatory criteria, the medical records were not included in the administrative record in this

case and were not relied upon by the Appeals Council in making its determination. As such, those records are not part of the administrative record before this Court for review. With respect to the Appeals Council's determination, the Court notes that consideration should be given to "medical evidence created after a claimant's last insured date when such evidence may be 'reflective of a possible earlier and progressive degeneration,'" Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 345 (4th Cir. 2012) (quoting Moore v. Finch, 418 F.2d 1224, 1226 (4th Cir. 1969)). However, the Appeals Council here concluded that Plaintiff's evidence was "about a later time" and did not affect the determination of disability prior to the date last insured. Plaintiff presents no argument that the records he sought to present were retrospective in nature. In fact, Plaintiff does not acknowledge or address the Appeals Council's determination that the evidence in question pertained to a later time, nor does he raise a challenge to the Appeals Council's decision not to accept the new records as part of the administrative record in this case. Accordingly, Plaintiff fails to show that the Appeals Council erred in its determination.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #9] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #11] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 22nd day of February, 2016.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge